Exxon Mobil Okay, you may proceed. Thank you. Good morning, Your Honors. Neal Henrickson on behalf of Appellants Lindsey Gulden, Damian Burch, we're asking to reserve two minutes for rebuttal, and we've ceded time to the Acting Secretary of the Department of Labor. May it please the Court, Your Honors, the District Court should be reversed in this case because it essentially rendered meaningless an enforcement provision of the Sarbanes-Oxley Act. Sock specific... We got to agree, and we got questions, and my first question is, what do we make of what you folks filed yesterday? Does it change anything in front of us today, the ARB's decision declining to allow an interlocutory appeal? It doesn't change anything because of the private cause of action Socks provides through ARB 21 to the appellants to go and enforce an order under Subsection 3 of ARB 21 in the District Court, and that's exactly what we're doing. And I think the ARB explains it is better left to this court to clarify the law. I mean, that's how we read that. Does it, or should it cause us any concern that, okay, this now is back in, and I'm not sure how you say the ALJ's name, is it Rosenau? Yes. So it says that this is now back in ALJ Rosenau's court, and that a merits decision, you know, the ALJ had put a stay on all the deadlines, do we know whether the ALJ has taken any action? Are there new deadlines in place? Is there a merits hearing set? Yes. So, Your Honor, may I clarify for the court, Monday, the ALJ held a conference call with the parties. Yesterday, the ALJ's law clerk sent an email clarifying that the ALJ on March 15th is setting, has set deadlines for a reply brief that was due, there was a motion to dismiss by Exxon on the pleading, that's the complaint before the ALJ, and that on March 15th, they'll be setting a hearing. Hold on just a second. Sure. I want to make sure I got that straight. On March 15th, they will set a hearing, or there will be a hearing on March 15th? They will set a hearing. They will set a hearing because we're entitled, both parties are entitled to a robust de novo discovery process. So through this process, OSHA had a very robust investigative period, which led to a reasonable cause finding, due process provided Exxon, leads to this preliminary reinstatement order, which is separate from the merits. And in fact, specifically, our position is, though not crystal clear, specifically provided for under SOX's incorporation of Air 21. Okay. I know you want to get into it. Sure. So we're giving you plenty of time. I sense like, oh, I'm only on nine minutes. I've been watching the clock too carefully the last couple days. So relax on that a little bit. Sure. And help us understand, what do you know or expect the calendar to be? Because I'm curious, out of curiosity's sake, but I'm more interested in knowing, are we under some kind of time pressure? We've got mootness arguments to talk about, but are the mootness arguments moot because this is all going to happen a year from now? Or is this stuff going to happen on a short term? What can you tell us about that? Well, what I can tell the court is that the merits arguments are going to, excuse me, the merits hearing de novo is going to be after a discovery process. Which typically, if you've got experience with this. Yes. Four to six months. Four to six months. Okay. Can I just chime in a little bit? It strikes me that there's a couple things in play. One, there was an agreement to a stay. Or a stay was imposed. I don't know if it was agreed to. It was not agreed to. So then, if it's not agreed to, I'm looking at this 1514A and it suggests if the secretary has not issued a final decision within 180 days of filing a complaint, then just come on into district court. And so, does that not fit? Am I not putting the statutes together right? It strikes me that there's this kind of back end, statutory back end that says, hey, you know, have your time at the administrative level. Have your preliminary hearings. Have your final hearings. Do all you need to do. But sooner or later, isn't there an election if things don't happen in 180 days to just say, administrative process is just too slow, too laborious. We're out of here. We're going to district court. Sure. And there is. Yeah, yeah. That's a cynical. You're absolutely right. There's an election. So we can elect. We could have elected 180 days out to spend two years in district court litigating this. Instead, we have a dedicated process through an ALJ experience with these issues, and that's what my clients have elected as they have entitlement to under SOX. So I guess my thought is, though, doesn't the election begin to color how we view a preliminary reinstatement order? Because it would seem that if you get a preliminary reinstatement order, the employer says, not following it, one of the things that you could do is you could say, hey, we're starting over in district court, and we'd like some degree of, you know, preliminary injunction, and look what we've got. We've got a reasonable cause finding by the agency, and we've got a preliminary reinstatement order. Therefore, it looks like we meet the test of likelihood of success on the merits. That's not too much of a stretch. And then you would sit there and say, yeah, and it's irreparable injury because the statute seems to recognize this. Well, I guess what I'm saying is you tell us that we're reading this one clause out of the statute. That's a good argument. But I guess what I'm saying in return is aren't there other kind of remedies or statutory scheme that take a little of the edge off your argument and doesn't 180 days do that since it just says the longest that someone could not reinstate might be 180 days because you could go right into federal court, seek a PI, and get them reinstated. Well, I'd submit, Your Honor, we'd run right into the district court's opinion because we would be bringing the action under Sarbanes-Oxley Act, and we would run right into the court saying what we believe erroneously they stated, that it doesn't provide for enforcement, that it's a meaningless. Wait. Why? Why would you run into that? Under the circumstances that Judge Phipps has just outlined, you wouldn't be arguing for your preliminary order, would you? You'd be in your own right saying we're entitled now, we're entitled to litigate in front of you. We are electing not to proceed on the administrative rules. It's taken too long. We're making our case to you. So we're not trying to enforce this preliminary order. That might be a piece of evidence in the case. That might be something we want to show you in the course of making our pitch for a preliminary injunction. But why does that run into the same problem you've got right now that everybody acknowledges we have to deal with? Well, one, we would, again, render meaningless this provision that Congress has said is part of SOX by saying no preliminary reinstatement can be enforced by the court saying that. Two, yes, we could go into and say, well, no, even though this is a piece of evidence that could show success on the merits on an injunction, the court could say, well, we disagree and not do that. That's what happens when you go to court. That's right. For two years I could sit in district court or I could take the ALJ process, which we haven't done. Hold on. Hold on. You've got to stop when we start. Okay. This is all going to be recorded. We may very well want a transcript of this. This is a stylized conversation. In ordinary discussion, people talk over each other all the time. And the mere fact that we're up here in black robes gives us the obligation to be respectful as we should but also requires us to say when we've got a question, you've got to stop. Absolutely. Otherwise, we can't make the record. Absolutely. Okay. So Judge Fitts was asked a question. I'd like to hear it, too, and then you can answer. Thank you. So my question is how exactly you say that this one provision of the objections don't operate is a stay is rendered meaningless. And I think that meaningless is maybe it loses meaning, but if you could come to federal court in 180 days and you could say, aha, my injury is irreparable, how do I know that my injury is irreparable? I know my injury is irreparable because this statute right here says that your objections don't stop me from being reinstated. And so that tells us that Congress felt that reinstatement was very, very important. And so for my preliminary injunction, I would like – and whistleblower protections were important. Yes, I might have had to wait 180 days. Yes, maybe that statute doesn't have – that line in the statute doesn't have as much force as I otherwise would have liked. But at least 180 days later, I can come get an employer. I've got a really good shot at getting an employer who wants to just absolutely disregard a preliminary in order. And I can do that in an Article III court that has all sorts of enforcement power that despite the power of federal agencies, power over parties, of course, is pretty strong. And we could go to court. And we could elect, though, to do what we've done, which is go before an administrative law judge, an expert in this area of law, and take advantage of an employment law that has private enforcement, has government enforcement, specifically set forth in the statute through ART 21, B-5 and B-6. And so, yes, Your Honor, we could spend two years litigating in a court of general jurisdiction to get a PI for reinstatement. PIs are pretty fast. Maybe not, but I already have – my clients already have a preliminary reinstatement order that is being ignored, which has been rendering it meaningless. Well, there's a lot packed into that. Let's unpack it a little bit. First, when you say I already have an order, the questions you're getting – well, I'll speak for myself, not for my colleagues. It sounds like what you're saying is we're entitled to run two tracts at the same time. We're entitled and elect to be in an administrative proceeding. But we don't want to wait for final agency action. We want to involve the federal courts right now, and we want both tracts happening simultaneously. We want to proceed here, but we also want the power of the federal court to come in. Now, isn't that contrary to administrative law principles generally? Don't the courts typically, very typically, under APA principles and just general sort of comedy principles, say, look, you come to us when it's done. Don't come to us in the middle. Come to us when it's over. Why – well, I'll just ask you that first. Isn't that something out of the norm? Not under this statute. You're right. In the norm review, Your Honor, is after final agency action. But this statute incorporating ART 20 Brock v. Roadway Express, the Supreme Court's dealing with the preliminary reinstatement. Right. And your opponents have made the point, which you should address. Take it straight on. First, begin with ART 21, all right? Their argument, just the very basic argument that they're making is this isn't complicated. There's subparagraph 2. There's subparagraph 3. There's subparagraph 6. 2 talks about preliminary orders. 3 talks about final orders. 6 says you can go to court when you've got a final order. It doesn't say anything about you can go to court when you've got a preliminary order. Just on the plain text, like, you know, we've read the briefs. We understand. But go ahead, take a whack at that, and we'll do some back and forth. Why should we read what you're saying into the statute when it's not in the statute? The statute says final orders. Respectfully, Your Honor, the statute does not say final orders. Subparagraph B6, which I'm bringing the claim under, a person on whose behalf an order was issued under paragraph 3, which is what this preliminary reinstatement order was issued under. It doesn't say final order. The paragraph 3 is entitled final order. That's correct. And it's incorporated by subparagraph B2, which says that you look to B3 for the remedy. And that's the remedy here. And so, essentially, we have a remedy without an enforcement. The remedy says when the secretary has determined that a violation has occurred. That is a definitive conclusion. Absolutely. Subsection 2 that says the secretary has reasonable cause to believe that a violation has occurred. So that's why it's preliminary. The secretary hasn't made a final decision. That's correct. And, again, if I may, with a hypothetical, just to clarify my answer on this. The administrative assistant at Enron in the corporate C-suite witnesses security fraud, blows the whistle. They know the assistant is a single parent. Can't pay the mortgage. Can't pay the bills. No preliminary reinstatement. We're just going to ignore it. We're ignoring an order after reasonable cause. Brock versus Roadway Express makes clear that this is, as long as due process is provided, the Supreme Court has said, that is a method of enforcing the law. That is specific in size. That meaning the preliminary order that the secretary can issue. Yes, correct. And that's why. So I don't think there's any, well, I don't think we've been presented with any argument that it's beyond the powers of the secretary to issue the preliminary order of reinstatement. That order is there as far as I know. It hasn't been challenged, hasn't been complied with apparently, but there it is. But the question is really about the district court's jurisdiction. And that's where we have to be very, very certain that Congress intended the district court to enforce an order. Because my understanding is part six of the statute, the district court doesn't get to evaluate whether it was proper or not. The district court will just say you must obey this order. And so why does the district court have jurisdiction to do that? Because it's an order issued under subparagraph three, pursuant to two. That's what you've got to say. How is it issued under paragraph three when paragraph three is stated to be, quote, final orders? I mean, I understand you say because paragraph two somehow gets pulled in there when it says at the conclusion of a hearing under paragraph two. Well, I guess that's what you're relying on. What are you relying on? On subparagraph two. Where it says preliminary order relief providing relief prescribed by 3B. That's your hook, right? That's correct. That's correct. Because obviously. Isn't that doing any more work than saying, hey, preliminary orders will be referencing the kinds of relief that you could get in a final order. By definition, it's a preliminary finding, but it's going to refer to the kinds of stuff you could get later on. It's not going to be. You won't get a preliminary order providing that everybody at ExxonMobil has to take May Day off or something like that. You'll get an order of the sort that you get with 3B. I don't understand why you think that a reference to the kinds of orders that you would get under 3B means that a preliminary order is a final order under three. Because Congress specifically in subparagraph two said, you know what? You could object, respondent, employer, on the overall finding of reasonable cause, except your objection does not stay preliminary reinstatement. And that leads you to subparagraph B6, which is where. Hold on. Sure. So your argument for why we should read that line about providing relief, a preliminary order providing the relief prescribed by 3B, your assertion is we should read that to mean, wait, a preliminary order really is a final order. It's because otherwise there's no meaning to the you won't get a stay. Correct. Well, so that's an important point to ask about. Why does the fact that they couldn't ignore you and they have mean that there's no power left in that language at all? Isn't it enough to say that the hammer can come down later? It may not come down when you want, but it can come down later. And when it does come down, the fact that they've chosen to ignore an order, should it go against them, may result in some assessment that's appropriate and due to the fact that they refuse to comply with the preliminary order? Well, that's because Congress recognized, remember Brock versus Roadway Express was already in place by 2002. I'm sorry. Of course. I asked my question badly. Let me try it again. Maybe I should frame it this way. Assume for the sake of discussion that this didn't go the way you wanted here and you were left to deal with them over a period of time. Would you have the ability, assuming you got to a final order under three, in your favor, to say our remedies need to make us whole for all the period of time that they ignored this and, in fact, some accounting should be made for their consummations behavior? Yes. And that's where my administrative assistant from Enron, who's foreclosed on and Congress recognized the importance of preliminary reinstatement. Let me just tease this out, though, because your answer to Judge Jordan's question suggests that it's not. This language does have meaning because it could be used to make whole later if you win in front of the secretary with the final determination. Let me just do a variation on a theme of his question. Let's say you get the preliminary reinstatement order. So your class was supposed to be reinstated. You go to the final hearing and you lose. Now they can't be reinstated. You've just lost. The failure to follow that preliminary reinstatement order, is anybody ever going to enforce that now? That could be or may not. Don't you have to say in order to render this meaningless that, no, there's zero enforcement shot of that now? And because there's zero enforcement shot of that now, I begin to hit no man's land, where I won a preliminary. I won reinstatement for my clients. I lost at the merit stage in front of the secretary after the hearing, after everything, after we did a really, really, really big kind of bilateral discussion, not just an investigatory discussion. I lost. How am I going to get reinstatement now? Because I lost. I should have had it. And I couldn't go to court to get it. They objected. They granted themselves their own stay with the objections. So I really am in no man's land. If I win over here, maybe we can just pile on. We can get all sorts of other things for the lack of reinstatement. But you lose. And isn't that – when I think about your case, it's almost like my strongest case is if I have a losing case later. I shouldn't be deprived of my winning – my ability to enforce my winning preliminary argument. So I guess my question – you said, no, I could still do something if I had a winning preliminary argument. What would that something be? Look, I think I would certainly, as an advocate, we would seek that pay for the time of the preliminary reinstatement. But Congress specifically said, when it said incorporate Air 21, you can't stay this preliminary reinstatement by merely an objection. It's recognized the importance of that for the immediacy. The immediacy. And that's what we're saying to this court to help clarify the law, which is not crystal clear. So it seems to me that you've read in one part to the clause that you think is meaningless. And that is the immediacy part. Maybe that clause still has value later at the final order stage where the secretary can say, you lose. I don't think – but I can't believe that Ex-Cont didn't reinstate. And so you're going to get some money. You're going to get some award to compensate for that reinstatement. If you lost, can you get an award for the preliminary period that the preliminary order would have given you reinstatement? I'm not aware of law on that. And right now, the secretary through ARB and the ALJ say we can't enforce. Doesn't the fact that the hypothetical – now we're having a conversation in front of you. Doesn't that create a little bit of a challenge? Because if you lose on the merits, isn't that a way of actually emphasizing the fact that preliminary things are preliminary for a reason? Because when you look at them fully and you say, no, you weren't entitled. That was a preliminary order. We've looked at it. And you were not wrongly discharged. You were rightly discharged. So, in fact, if you had gotten anything, that would have been an error. That would have been a windfall. You never should have had anything. And that's why we wait until agencies are finished. We wait until the end before we get the courts involved. Precisely so the agency can do everything it's supposed to do before it starts handing out money and reinstatements and things like that. That's right. And that's why there's robust due process here. And that's why the Supreme Court in Brock v. Roe v. Wade said you need that kind of robust due process. And Congress here has said private cause of action, 6D, for the complainant to go and enforce an order. And we have that order, and we're back to that argument again. And back on the Brock piece. You know, Brock was interpreting the STAA where the statute specifically says that the secretary can bring a civil action to enforce a preliminary order. And it specifically refers to subsection B of that statute where it's a very similar preliminary order. But this statute that we're looking at, Air 21, it doesn't say that. Okay. And respectfully, Judge Freeman, this STAA, and my colleagues in the Department of Labor could talk more to this, STAA, which is a predecessor and incorporated into Air 21, doesn't specifically say it can enforce a preliminary order. However, it says specifically it can enforce paragraph B, which does lump in preliminary order and a final order. You put your finger right on it. They are closely related, these two statutes. But the Surface Transportation Assistance Act, it leaves it all in one paragraph. Air 21 breaks it into two. And the Surface Transportation Assistance Act is pretty clear in saying, very clear in saying, you can get relief for this, which includes preliminary relief. That is not the way this statute is structured. Don't we presume that Congress knows what they're doing, especially when they appear to be modeling one act after another, that when they do something different, they did it different on purpose. And they did it on purpose to say, okay, under that STAA, the Secretary can go get relief on a preliminary order. You can't do that here. Why does that negative inference not sink your boat? Because the enforcement provision in district court is not limited to only final orders, one, two. Two, I'm back to the STAA, excuse me, the incorporation of subparagraph three. And so, yes, is it fairly discernible? We would submit it is, that it is incorporated in. Can I ask one more question about your interpretation? The enforcement that you're asking for, right, would be in district court, right? And at the enforcement stage, could Exxon Mobil dispute the Secretary's reasonableness of violation finding? Not according to SOX. So that's before the ALJ. They could, of course, dispute. So I just want to make sure that I understand the due process angle here, right? Because you've told us about Roadway Express a lot of times. So you bring your preliminary order for reinstatement into the district court, and they want to say, hey, that was totally bogus. That was, like, just, you know, arbitrary and capricious to the nth degree. You say, no, district court can't, no, no, no, we're not here to entertain that. We just want you to enforce this order. It seems that due process would say that before a federal court enforces an order, that the party who's being sued for non-enforcement would get an opportunity to challenge that order. I think that's what due process means. Now, the problem I have, if that is what due process means, is then your reading of the statute puts us in two places, because the final order goes directly to the court of appeals to assess the propriety of the order, yet the preliminary order goes to district courts to enforce the propriety of the order. And now we've got a conundrum in terms of which federal courts are controlling. Would the enforcement order of the district court bind a later court of appeals, who's looking at the later stage of the proceeding? And that feels a little, you know, I mean, not to talk about the structure of federal courts, but maybe a little upside down. Respectfully, somewhat apples and oranges, due process evaluation, as Your Honor said, arbitrary capricious versus the merits argument, which would be in the jurisdiction of the court of appeals. Yeah, but not the court of appeals, which makes it even more curious, because if you go through this administrative process, you end up in the Fifth Circuit, right? Correct. Okay. So if we followed your suggestion, you could have the Third Circuit squaring off against the Fifth Circuit, and those are some tough hombres. I'm not sure I want to get into that match with that. So aren't you asking us to just make trouble within the federal court system? Not at all, Your Honor. Not at all. We're asking for enforcement of an act of Congress that socks the second deprivation. According to your route, it could end up in two federal courts of appeals. It could end up in the Fifth Circuit. It could end up in the Third Circuit. And could Congress really have intended that, Mr. Hendrick? Well, first off, I would agree it shouldn't end up for the same issues before two separate courts of appeals, the Fifth and the Third. It certainly could. I mean, that's why we're noodling this out with you. It could be that you go to court and your position is, hey, you're not allowed to look at this, and then the courts say, well, we've got to look at it for due process sake, and it does get looked at, and the merits are getting kicked around in the district court and kicked up to the Third Circuit while the same thing is happening through the administrative route to the Fifth Circuit. So Third Circuit, Fifth Circuit, why isn't that just a gigantic problem that says this can't be the way the system works? Well, I'd submit, Your Honor, different issues. It's a due process, arbitrary and capricious issue versus the finding on the merits with review in the Fifth Circuit, Your Honor. Thank you, Your Honor. Well, thank you very much, Mr. Hendrick. We'll go ahead and give some time here to Mr. Adele. Thank you, Your Honor. Did I say your name right, sir? Yes, you did. Thank you. I got that mic today. Yes. May it please the Court. David Adele for the United States Department of Labor. And I had some prepared remarks, but you've asked a lot of questions, and so I figured I would try to answer some of the questions that you've already asked, if I may. Okay. Let me start. One of the main arguments pressed by your colleague is that, look, there's this reference to paragraph 3 in paragraph 2. So clearly the orders that are being given are under paragraph 3, and that's why we can get into court. There's also, if I'm remembering right, there's a reference in paragraph 3 to hearings under paragraph 2. Nobody would argue, though, would they, that final orders are final orders under paragraph 2, right? Do you follow what I'm asking? I mean, like, there's a reference to paragraph 3 in paragraph 2, and your assertion is, ah, that means paragraph 2 is really a final order under paragraph 3 for purposes of 6. There's a reference to paragraph 2 in paragraph 3. Would anybody suggest that what's happening in paragraph 3 is really a preliminary order under paragraph 2 because there's a reference to it? Well, I think in the department's interpretation, the word under is being used to describe or to state that the equivalent of subject to or governed by or in accordance with. So, you know, the existence of just any reference doesn't necessarily get you there. But the reference in paragraph 2 that says that a preliminary order is going to issue remedies prescribed by paragraph 3 is sufficient. So the word under has to be given meaning there, right? That's right. In the Supreme Court's Androstaty v. INS case, let me read you something from that. This is under the INS statute and also trying to interpret the Equal Access to Justice Act. The most natural reading of the EHAA, the Equal Access to Justice Act, applicability to adjudications under section 554 of DIN-A, is that those proceedings must be subject to or governed by section 554 ellipses. The plain and ordinary meaning of under, as it appears in the EHAA, is that proceedings must be governed by the procedures mandated by the APA. So my question to you is that language about subject to, governed by, why doesn't that indicate that when it talks about providing relief prescribed by 3B, it's not providing relief under 3B. It's talking about the kinds of relief under 3B, but it's not making everything that happens under 2 a final order under 3. Maybe I've done that poorly, but do you understand what I'm trying to ask you, sir? Does that word under that the Supreme Court has said means governed by, subject to, it doesn't seem to fit if what you're trying to do is to say, oh, that's what makes this reference to 3B really mean that the provisional order is under 3B? Well, respectfully, the Ardestani case, the Supreme Court says that the word under has many different dictionary definitions and draws its meaning from context. Oh, sorry, go ahead. Well, in the Kucana case, the court calls it a chameleon, and so we look through the different meanings, potential meanings of the word under, and we think that the meaning of subject to or governed by here is the meaning that best allows the court to address the other issues in the statute, which are the insignificance canon. So that's the big thing. We're always coming back to that, right? It is really, really the concern is always about, unless we read the statute this way, the no-stay assertion in the statute doesn't have force. That's the concern that the Department of Labor has? That's right. It's a textual concern. Congress put that language into the statute. What does that language mean? We have to interpret a statute so that we don't render key parts of the statute inoperative or void or insignificant. So can I get back to your definition of the term under? Look, under is a chameleon. It means that we're going to look really, really heavily to context to understand what that means. And so when we're talking about paragraph 6A, it says a person on whose behalf – and the word I'm going to focus on is the next phrase – an order was issued under paragraph 3. Now, under seems to modify this kind of issuing of an order. Now, if Congress rewrote this and said a person on whose behalf relief was awarded under paragraph 3, then everything fits together. You can come on and you can say we don't want to do this. We aren't looking about final orders. We're just looking about relief under paragraph 3. We don't care if you got that relief from a preliminary matter or a secondary matter. But Congress chose the word order under paragraph 3. And paragraph 3 only addresses final orders. So all of your points seem to make sense except for the fact that Congress chose the word order as the context for the word under. And so it seems very strange to say we're going to read under as if the other word in the sentence was relief. If so, I think you have a really good case. I think you have a really good case. But Congress said an order under 3, and 3 is only about final orders. Yeah, two links to it. It says under 2 you can get the relief provided under 3. But this word, if we want to say what does the text mean, the word under derives meaning from context, and the context here is order, not relief. What do you say? It's an easier case, Mr. Leach. You'll probably agree with that. Well, I believe that an order is issued to provide the relief. And so I'm not sure that disaggregating them in that way is— Well, I mean, they aren't interchangeable. Relief and orders aren't necessarily interchangeable legal terms of art. And context matters, right? You agreed on that. Context absolutely matters. And we agree, and we stated in our brief, that the statute is less than clear. And it's a challenging statute. And this language is challenging. But you can't—extrapolating to see where I think you're going here, we're left with the situation. Congress wrote in this language, shall not operate to stay. And it effectively has no purpose. And if I may quickly answer the question about the kick-out provision, I'd like to— First, I've got a question. Okay. Here's my question. And it's the same one that I had put to Mr. Hendrickson. The assertion that if this doesn't provide for immediate access to federal courts, then it has rendered the no state provision null and void. Seems to not take account of the possibility that it could mean you're not supposed to do this. You don't—you're not entitled to a stay. And the mere fact that you filed some objection doesn't mean you get a stay. Couldn't that be read to mean that the agency doesn't give you a stay because of that? Should you choose to ignore that and give yourself a de facto stay? Well, that can have consequences downstream. But it doesn't mean you have to have consequences right then. Isn't it—isn't it possible to read and still give force to that by reading it to understand you're not entitled to a stay automatically from the agency? Not—you can't ignore it. But if you ignore it, you might get in trouble later. That's a key question, Your Honor. And, you know, that was raised a little bit with my colleague. And there are a couple points I'd like to make. The first is that, you know, in the circumstance in which the secretary ultimately determines that there is no merit or a court determines that there is no merit, in that circumstance, the secretary of labor has determined that there is no damages, monetary sanctions remedy that can be provided by the secretary. And that's a case— In which case there's a belief that the preliminary order was not as well-founded as they thought. That, in fact, there shouldn't have been a preliminary order because there really wasn't any wrongdoing. Right? Isn't that—isn't that the necessary logical conclusion of saying you lost at the end because your claim was found not to have merit? I mean, it's not like you had merit and then something happened and you didn't have merit. This is all looking at historical facts from before the agency administrative proceedings began. If I can point the court to a case that the parties— Wait. Bring to that question first, right? Because this does go to Judge Phipps' earlier question. Right. Meaning the applicants here, the appellants here. If they were to lose at the end, that would be an agency finding, a final agency finding, that they weren't wronged at all. Right? That's correct. Okay. In which case the necessary conclusion is there shouldn't have been a preliminary finding on their behalf because there really wasn't anything wrong done to them. So thank heavens there wasn't a reinstatement because they were never entitled to it. That would be—that's the logical conclusion one has to draw, isn't it? No. No? Because you could be entitled to relief, which ultimately was decided you never should have had? Well, I mean, there are different standards, and I think that you can ultimately— I understand that. Right. You can conclude ultimately that there was no violation, and it doesn't render the initial decision that there was reasonable cause to believe necessarily incorrect. Well, it necessarily means that you shouldn't have had relief. I mean, the conclusion—we're circling in on exactly the point here. There may be reason to believe, and then you get to a full hearing and determine, yeah, there was reason to believe, but we were wrong. I mean, there was reason to believe that, but it turns out that on the merits we shouldn't believe it. That was a preliminary conclusion that turns out to be false. Preliminary conclusions turn out to be false all the time. Cops make arrests—make carry stops on reasonable suspicion, and the suspicion was wrong. They make arrests on probable cause, and it turns out the arrest shouldn't have taken place. It doesn't make the actions of the police officer bad, but it does mean that we don't keep somebody in jail, or when we let them out of jail, that they should be happy because they never should have been in jail. Right? Here, there's a preliminary finding on the hypothetical. They turn out to be wrong in the end, and I guess I'm hammering this with you to try to understand on Judge Fitts' hypothetical, doesn't that really drive home the point that you shouldn't be enforcing this stuff in federal court on a preliminary basis because it's not final and we don't know yet? By definition, we don't know yet. I mean, I think the answer to that question is the Brock v. Rodley Express case, where the Supreme Court considered the entire concept of preliminary orders, and whether, you know, in the context of an enforcement of a preliminary order— On a statute that gave the power to do it. But these arguments, as I'm understanding your hypotheticals here, are arguments against the concept of preliminary orders that are enforceable, and the Supreme Court said that Congress examined Congress' intent and found there to be a reason to have preliminary orders to reinstate complainants immediately. Which the Secretary could enforce in those instances. It's not a private party, right? That's correct. If I may answer the question— And presumably the Secretary is above mere partisanship and is trying to think of the overall good and would be thinking of that as a good of the system and not individual, like, take care of this person or that person, overall systemic issues, right? That is correct. Okay. But if I may answer the question, the Windhauser case is ARB 05-127. It's a case that the parties have briefed below and in the ARB as a background here, but I don't think anyone cited it to this court. And that case is where the Secretary of Labor determined through the Administrative Review Board that there's no monetary sanctions for disobeying a preliminary order because it is a question for the courts as to whether or not preliminary orders should be enforced. And in the circumstance that you suggest where the merits decision is ultimately adverse to the complainant, we do think that that raises a real question. There probably shouldn't be any damages at all in that circumstance. To the extent that the merits decision is in favor of the claimant, the damages are going to go back to the date of the harm to which the preliminary order is simply irrelevant. So we don't see that there's any other damages. Is there any power in the agency to do anything to sanction consummationist behavior or not? Through potentially adverse inferences in an evidentiary hearing, but this isn't the type of behavior that would generally lead to that kind of adverse inference. We are unaware of any possible meaning for this, and no party has brought up a viable significance to this language. I postulated one in speaking with Mr. Hendrickson, which was if you waited 180 days and if you came to federal court, then this would help you show that your injury was irreparable because this clause shows Congress's intent that reinstatement is of the essence. And so you could go to federal court and you could say, look, I've got this clause. It might not be enforceable if the administrator's left, but I want to tell you something. It sure tells me right now that I've got an irreparable injury. That's what Congress viewed it as. That's why the objections aren't self-executing. And so if I've waited 180 days, but if I've got a likelihood of success on the merits, which I might have because the secretary's investigation or at least the agency's investigation came out in my favor, I want this enforced. So can't it be used later under the option to go into federal court to prove at a minimum irreparable harm? And if so, then it doesn't have the fullness of meaning that you want. I know that. But meaningless, I don't know if it's taken down to zero. It might be taken down to 2% or 5%. But the canon on superfluity is a meaningless canon. And so even a clause that's down at 2% isn't superfluous. It might not have 100% meaning you want. It's not superfluous. So haven't I posited a scenario where that clause could have real meaning if a client elected to go to federal court and elected to seek a PI? So I have two answers to that question. The first is to step back and point out that SOX adopted AIR-21's language, but the chamber agrees in their brief that Congress was intending to adopt the AIR-21 language in the meaning that Congress gave it in AIR-21. And in AIR-21, there is no kick-out provision. So you can't just reverse import the kick-out provision from SOX back to 1999 and import that meaning of the kick-out provision into the AIR-21 text because that's just not how it works. And the chamber, I think, would agree with us on that, I would hope. So this whole idea that you've got the option to go out at 180 days, that's not accurate? That is not accurate in an AIR-21 case alone. And that kick-out provision doesn't exist in AIR-21 as it was passed in 2000. It was only added into the SOX statute, which adopts the rules and procedures of AIR-21. So what you're really saying is it might have meaning in this case, but it wouldn't have meaning in a pure AIR-21 case. Right. And as we look at what Congress intended. I understand. Right. But second is that in terms of what it gives meaning here, which I don't think is particularly relevant because we're looking at Congress's intent and we derived that from the AIR-21 statute. But here the case law on irreparableness is not particularly strong for reinstatement. It basically never happens. But doesn't that counsel in favor of the value of this provision? I get it. Reinstatement is a drastic remedy. Two people don't get along. The last thing we want to do is have a court order forcing them to work together again. It's a really, really, really drastic remedy generally. That's why maybe we could say Congress wrote this in. Because we're trying to overcome the reluctance of courts to force relationships that don't work. I would go back to my initial argument about where we see Congress's intent here. But I agree that we would want you as a judge there. On that point, please answer the same question I put to Mr. Hendrickson. From the Department of Labor standpoint, is it the position that Congress intended for the same thing to show up in two different courts of appeals? It intended for you to be able, as a complainant, to pursue an administrative remedy, also initiate a district court action based on a preliminary finding, and potentially have two courts of appeals addressing the same case. Is that the Labor Department's view of Congress's intent? Yes. Okay. And that's because of Brock v. Roadway Express, where that potential exists in Brock v. Roadway Express. So that potential exists in Roadway Express in the Brock case, perhaps in part because the Supreme Court had some confidence that the Secretary of Labor, or in that case the Secretary of Transportation, or whoever is responsible there, would not be doing something which could result in two courts of appeals having to deal with something at the same time. That the Secretary of a cabinet post would appreciate the consequences of going forward in two places at once. Is that possible? I do think that it is not particularly likely, that scenario, that we'd have multiplying litigation. It sounds like it's a real possibility here, like a real possibility here. Everybody acknowledges that this thing is going to end up in the Fifth Circuit if it goes to business in the administrative route, and you're already here. So I'm not sure how that's a far-fetched possibility at all. It seems to me like if Mr. Henrichs and his clients got what they wanted, it could very easily be the case that we're here and you're in New Orleans at the same time. Well, I mean, I think the fact is that that's how Congress wrote the Stas statute. That is a possibility. It's not one that we think is likely. Well, do you have anything? Thanks very much, Mr. Udall. I appreciate the Department's amicus brief and your willingness to appear here today. Thank you, Your Honor. We'll go ahead and now we'll hear from the counsel for ExxonMobil. Good morning, Your Honors. May it please the Court, Richard Sino on behalf of Apelli ExxonMobil Corporation. The district court correctly determined it lacked jurisdiction under the statutory language of SOX to entertain an action for a court. Yeah, you've got some great opening remarks, no doubt, but you've also briefed this thing fairly well. And so please go directly to the thing that we've been talking about repeatedly, which is if this determination, if the district court's determination is upheld, we will have gutted a key provision of this statute. Because ExxonMobil just decided we're not doing that. They weren't entitled to a stay. The statute's very explicit about that. And you gave yourself one anyway. You just did it. And that can't be what Congress intended. And if we give you what you want, which is an affirmance, we're sanctioning ignoring plain text, and we're sanctioning bad litigation behavior in the face of an order. What's your response to that? I don't believe we're ignoring any statutory text with regard to the... How can you interpret that in any way other than you gave yourself a stay? The preliminary order of preliminary reinstatement is unstayed. As Your Honor has noted, it is not without legal consequence. Well, we'll get to that in a second. But I guess I'm curious to hear how you say it isn't the equivalent of a stay. I'm just puzzled by that. You stayed the order. They said reinstate these people, and you said, no, we're not doing that. Well, again, it was based on a reasonable cause to believe that a violation had occurred. That's a whole different thing. Don't go there. You made an assertion, and I'm pressing you on it because I don't even understand it. How do we interpret what ExxonMobil did in any way other than a self-granted stay? That we looked at the issues presented. We were not cavalier about the decision. I didn't say you were cavalier. You're not following it, though. I might say that. You have an order to reinstate. And you said no. I mean, that's pretty – that's really disregard. Is the order a paper tiger to you? You just don't care? It's an order to reinstate. It means nothing to you? Of course it does. We await the de novo hearing before the objection. But the order wasn't to reinstate after a de novo hearing. It's like if a court gives a TRO or preliminary injunction, and a party says, no thanks. See what the jury thinks. I get it. There's reasons to wait for the jury. We trust juries. We like juries. But you have a prior order, and a court would mandate your compliance with that. So why isn't – you're giving it no weight. You're not following it. No. Not at all. You're not following it, right? Well, we haven't reinstated. That's right. And the order said to reinstate. Absolutely. But we believe that we had good reason not to reinstate these individuals based upon – All that's given. Maybe you can't say what is obvious to everyone because it's difficult for you to say it, given you've got obligations to your client. But why don't you just take it as a given that to the rest of the world, if you ignore an order that seems to be the equivalent of a self-granted – that seems to be a self-granted stay. Satchel says, you don't get a stay? You said, I'm giving myself one anyway. I'm not reinstating. So let's take that. Unless you can explain a logical reason to not view it that way, let's take that as a baseline from which we can have further discussion. It doesn't matter that you thought you had good reasons. We're not even talking about that. It just is like a foundational fact to be dealt with. You seem to be taking the position that, well, that isn't what happened, but it sure looks like it is what happened. So if you've got another reason to explain how it's not that, I'm ready to hear it. Otherwise, let's move off of it because you're not going to persuade me, at least, that that isn't what happened. So is there another logical way to look at what you did, you being ExxonMobil, as anything other than a decision that we don't care what that statute says. We are not going to do that. We are going to not do that. We are giving ourselves a stay until we get to final order. Well, the stay, again, it's subject to a de novo hearing. We had the Sixth Circuit in the Tennessee Commercial Bank case, Solace v. Tennessee Commercial Bank, the one court that enforced the preliminary order of reinforcement at the district court level. When the employer moved for a stay pending appeal, the Sixth Circuit held that reinstatement will cause disruption to the company and that cannot be undone by the court. Maybe it's my fault, but it's unproductive at this point. Apparently, you can't acknowledge it, so let's just move on and assume for the sake of discussion that at least one person on the panel thought this was the equivalent of just a self-declared stay. Then the question becomes, is there a rationale under which you can give meaning to that language in the statute that you've heard us discussing with Mr. Hendrickson and Mr. Adili? Or is it really rendered meaningless by a lack of any remedy in the federal court to enforce it? Is there any weight to it? Are there teeth to it? Is there any consequence to your client's behavior at all by its choice to ignore the order? Any consequence at all? I'm ready to hear it. Of course there's potential consequences. If we go through the process and there are damages, and they were to succeed, the schools that are Mr. Birch, there would be damages that would flow from that. Well, there would be damages, the same damages would flow. Is there any extra consequence? Could he be sanctioned? Could he be held in contempt someday for this? Because the answer is, you don't want to reinstate. Well, maybe they win a reinstatement order later. Maybe they get damages for the interperiod time, compensatory damages, but they never get put back in a position if they win on the merits that they should have been because you granted yourself a stay. So the question is, is it just sorry? Or is it, yeah, my client is subject to sanctions at that point in time. My client is subject to contempt at that point in time. My client is subject to other ethical remedies that would deter future publicly traded companies from doing this. Because if there isn't something extra, then the notion of meaningless really creeps in. Well, the preliminary order of reinstatement has meaning. It is an inflection point as we sit here. The parties can take action. Sure, that's the preliminary order. The question isn't, does the preliminary order have meaning? The question is, does your refusal to obey the preliminary order have meaning? That's the question that's being put to you. Is there any consequence at all, any consequence at all, that flows from Walmart, excuse me, we've got a Walmart. Sorry, Walmart, wherever you are, that flows from ExxonMobil's refusal to obey the preliminary order, which statutorily it is obligated to without having a say? Again, it's in the form of damages. That's not an – maybe we're talking about – That's nothing extra. That would be the same thing that would happen with or without this, sort of. So my understanding is there's no – the preliminary order comes out. Your client decides not to comply with it. There are no consequences up to the time at which there may be a final order. And so that could be – it sounds like there's going to be now a hearing. There's going to be four to six months of discovery. If you agree with that, there's going to be a hearing. Maybe someday there will be a final order, and maybe at that point there will be some consequences for your client's failure to comply with the preliminary order. Is that correct? Yes, that's correct. The preliminary – the unstated preliminary order statement currently sits on the parties. Okay. The way the statutory scheme works – I'm sorry, Judge, we have another question. No, no, go ahead. The way the statutory scheme works is post the ExxonMobil filed its objections to both the finding and the ordered relief, we now go to a full de novo hearing before the ALJ. And that all might be great. You might win. You might have a terrific case on the merit. Nobody's trying to prejudge that. This is – the purpose of these questions is not to make anybody uncomfortable. It's to actually understand what is the meaning of that phrase in the statute. They said it's got no meaning unless they're given an enforcement. I'm trying to search out what could that meaning be if you can just ignore it at your will and I'm waiting to hear. I have a sort of specific question. Do you agree that Paragraph 2 allows the Secretary to enter a preliminary order requiring the company to reinstate the employee? Paragraph 2 states that Secretary of Labor concludes that there's reasonable cause to believe a violation of the statute has occurred. Yes, so that's the standard. It shall accompany those findings with a preliminary order. Okay. Is that what happened here? Yes. Okay. So Paragraph 2 says the Secretary may issue a preliminary order of reinstatement. Okay. And then later in Paragraph 2, they contemplate objections to the preliminary order, and it states that the filing of such objections shall not operate to stay any reinstatement remedy contained in the preliminary order. Right? So objections or no objections, no stay of the reinstatement. And that's a clear statement from Congress in here, right? That filing objection would not operate as a stay. Okay. So we have the reinstatement order. There's no way to stay that, and yet there's no way to enforce reinstatement that the Secretary has ordered. Based on the language of the statute, there is no jurisdiction of the federal courts to enforce a preliminary order of reinstatement. Is there jurisdiction of anyone else to enforce it? Not to my knowledge. Creatively, otherwise? No. Okay. So it is your position, then, that the preliminary order of reinstatement can exist in the world. It will not be formally stayed by any agency or court, but it cannot be enforced. It cannot be enforced in federal court, correct, or not at all. Okay. Yeah. Thank you. This is the point. It's not just that it can't be enforced here. Your position is it can't be enforced anywhere, which leads to the question, your legal position, then, is that sentence, the filing of such objections shall not operate to stay in a reinstatement remedy, is meaningless. It has no consequence whatsoever. No, Your Honor. Well, what's the consequence? The reinstatement remedy still, it can be rectified. If the appellants were to fail. We're not communicating. The question isn't will they come back and get it. It is does the meaning, does the phrase shall not operate to stay have any meaning? Because what you're saying is it has no legal effect, period. Well, I believe it does because the preliminary order that accompanied the initial findings has a variety of relief, including reinstatement. The balance of that is stayed. This is not stayed. So the parties are aware that the preliminary order of reinstatement is unstayed and will be unstayed for the length of this litigation. But you've stayed it. You have effectively stayed it. You're under an order. You have an order in place. It says you will reinstate these people. ExxonMobil will not reinstate them, has not, evidently has no intention of reinstating them, maybe at any point, but certainly not now. So just putting it to you flatly, can you give any meaning to this language at all? Any meaning at all to the language shall not operate as a stay? What is the meaning of that language if you can give yourself a stay and nobody can do anything about it? That to the extent there are damages that result in this case, they would calculate from the beginning of the preliminary reinstatement. So can I tease out this a little bit? Because when we get to paragraph 3, which is the final order paragraph, it says that there's – it gives Roman 1, 2, and 3. This is 3B. It gives Roman 1, 2, and 3 about the remedies. Roman 2 is reinstate the complainant. Roman 3 is provide compensatory damages to the complainant. So those are always on the table whether you follow the order or not. I want to talk about number one. Number one allows the secretary on a final order to take affirmative action to abate the violation. If a client such as yours disregards a preliminary order, can the secretary take contempt or sanctionable action, affirmative action, because your client's derogation of the order exacerbated the violation? And so if you tell me that you think that B1 means that sanctions are in play for your client and everybody else that does this, then maybe that line does have meaning. But if you're going to say, nope, you can't sanction us, you can't contempt, the only parts of B I care about are 2 and 3, then you aren't giving it meaning. It seems to me if you want to really say there's no jurisdiction for it, you have to own up to back-end sanctions. Do you own up to those? Well, I'd like to take a step back. I'd really like you to just answer that. Do you own up to the fact that if you don't follow, if your client doesn't follow a preliminary order, your client faces back-end sanctions by the secretary under paragraph 3B1? Do you own up to that? But that is the remedy provision of AR21. And that provides meaning as to why. Does it allow for sanctions? That's what's being put to you, Mr. Steele. Just answer that. Does it allow for sanctions or not? Yes. Well, I'm unsure if it allows for sanctions. This is a remedy under AR21. The affirmative action to abate the violation is not in the SOX, the Sarbanes-Oxley remedy section. SOX, the remedy section, Sarbanes-Oxley, is to render the employee whole. So this is not what you're saying is, yeah, AR21 is pulled into SOX by reference, but not all of AR21? They left B1 out? We did. The rules and procedures of AR21 are read into Sarbanes-Oxley. Oh, this is important. Would you give us where in SOX it says we are incorporating AR21 by reference, except for 3B, small Roman 1? Where does it say not everything but that? Well, a comparison of the statutes. There are a variety of provisions in the statutes. So it doesn't say that? Well, it says an action, what Sarbanes-Oxley says at 1514A, 2A, under procedure, is an action under paragraph 1A shall be governed under the rules and procedures set forth in section 42, 121B of Title 49. Which is what we've been talking about, right? But not the remedies. It does not incorporate the remedies of AR21. There's a distinction. AR21 has an abatement violation. So when we look at this, we were mistaken when we thought about it. Because this is significant. We were mistaken. I was mistaken, and I don't want to attribute it to anybody else. I thought that the remedies, I thought the whole thing was incorporated by reference. But the remedies are not. Correct. Okay. Thank you. That is helpful. There's other aspects of the statute as well that exist in Sarbanes that don't exist in AR21, like the 180-day opt-out provision that's been the subject of discussion, as well as the right to a jury trial. It pulled in procedures but not remedies. Okay. Yes. Okay. Thank you, Mr. Sino. I believe you've ceded some of your time. Yes. Mr. Palmer? Mr. Palmer? While you're coming up, just to give a heads-up to Mr. Henrickson for his two minutes, I wanted to answer the question that Mr. Sino has put on the table about whether remedies are in or they're not. He's right about the procedure being in, but the remedies not. Thanks.  May it please the Court. I'm Kevin Palmer for MX Curie, Chamber of Commerce of the United States of America, and I understand from prior oral argument that you'd prefer I dispense with the introduction and get straight to questions. So I'm happy to address the Court's questions about whether there's meaning to it. Yes, the big question is, and you can take a swing at it too, is there any meaning left to shall not operate to stay, the language in that subparagraph two, if a party can simply say, no, I'm not doing it. I'm not doing it. Yes, Your Honor, and perhaps the better terming is a choice to violate the order as opposed to a stay, but that may be a matter of semantics. But as Judge Gipps identified in his questioning of counsel, this could absolutely be relevant on a motion for a preliminary injunction in an original district court proceeding under Section 1514A, B1B. So after 180 days, that would certainly be relevant to the Court's calculation of irreparable injury and to the balance sheet. Answer Mr. Adele's point. I'm sorry. I thought counsel for ExxonMobil said that the 180-day provision was not relevant. Am I wrong about that? It was not available in these circumstances. The provision had no meaning. Right. I thought we heard that, and I think we heard it from the other side too, that Air 21 has that the 180-day out is a SOX provision, and that's not in Air 21. And so you can't look to SOX in understanding what Air 21 meant. You have to look at Air 21 in isolation to understand what Congress meant. Maybe I misunderstood that. Maybe we all three of us misunderstood it. That principle may be correct, Your Honor, but this is a SOX action. It's a SOX action, but we're trying to interpret Congress's intent and meaning about this language, which is the Air 21 language. And I think Mr. Adele said it, and maybe Mr. Sino said it as well, that you cannot, that 180 – no, he did say it. I remember. He's right. The 180-day out, that's in SOX. It's not in Air 21. The 180-day out is in SOX, and we've encouraged the court to interpret Air 21 in the context of SOX, because that's the cause of action here is a SOX case. But there are other signals within Air 21. Wait. Just logically, how can that work? How is it helpful to know what SOX means when the question you're asking is, what did a prior enactment, Air 21, mean when Congress enacted it? Clearly, it didn't mean what SOX says, which wasn't in existence yet. True. Well, just looking within Air 21 alone, there's a special damages provision within Air 21 as well that grants the ALJ discretion to calculate reasonable attorneys fees. That's another provision where they may look at noncompliance as well. And then your examination of Mr. Sino of Section 1 under Paragraph 3B, that isn't briefed in the record here. It's not up for decision here, but that certainly may be litigated in the future. The agency rules are unclear. It's unclear what the agency's position on Paragraph B1 and Paragraph B3 of the Air 21 remedies. So can I just piece something out on this in terms of the interplay between Air 21 and SOX? I asked Mr. Sino what the remedy would be, and he said, no, we don't care about Paragraph 3B, especially Paragraph 3B1 of the Air 21, because the only remedies are under SOX. Right. Now, as I understand it, and just tell me if I'm wrong on this, but I thought the SOX remedies were the only remedies that courts could give. And then I thought that we were still looking to Paragraph 3B1 for remedies that the secretary could give as long as that's in an administrative proceeding. And so I didn't realize, and I didn't read the remedies in SOX to preempt the relief that, or to take the place of the relief that the secretary could give in an administrative proceeding. Am I wrong about that? Did I glitch that? Did SOX substitute for Paragraph B in the remedies that are available administratively? They're just the remedies available in court. No or not? Am I wrong? No, Judge Phipps. Our understanding is that the remedies in Air 21 remain in place. The remedies in SOX are also similarly worded. My reference to the remedy section in Air 21 was to get to Judge Jordan's question about interpreting Congress's intent in Air 21. So if that's true, then can I just press to you because you come as amicus. You represent more than just the party in front of us. And this may be actually a harder question for you, maybe less immediate than the party in front of us, which is could the secretary under B1 take affirmative action to abate a violation? Could that include sanctions or other sort of contempt-style relief for a party that did not at the administrative level follow a preliminary order of reinstatement? Does take affirmative action to abate the violation include that sort of relief or not? It may, Your Honor. The agency rules are unclear on that point. And to the Chamber's knowledge, that hasn't been litigated. That's certainly a provision that could be subject to an Article III court's review if the agency does interpret affirmative action to encompass sanctions. But if it does, then, though, it goes a long way. Not a long way. Maybe, as I'm saying, one or two percent of the way to giving meaning to the you can't give yourself a stay. Because if you do, the Secretary of Labor on final decision is going to get you because it's going to abate the violation. It's going to take action to abate the violation, and your violation continued by not following their reasonable determination decision. So the more meaning this has, the more meaning this provision has, the broader relief that allows may be the more meaning the can't give yourself a stay has. That's correct, Your Honor. And you were correct earlier to note that the can and against superfluity only requires that one to two percent of meaning. It's a zero percent rule. And Congress's choice here was to give these preliminary orders of reinstatement less meaning here than in the context of the STAA, where they're explicitly enforceable in district court. Here they're not. That was a deliberate choice to amend that. As the Secretary conceded in her brief, the STAA was the model legislation for Air 21. That under paragraph B, which encompassed STAA both preliminary and final orders, was modified to under subparagraph 3 in Air 21. That's a meaningful distinction. That was a choice to withdraw. We're with you on that. But to Judge Phipps' question, your answer, does abate mean subject to sanctions? Your answer is, gee, maybe, don't know, could be, right? You're not prepared to say, yeah, you're prepared to say maybe. It's possible. And that's the appropriate answer in this case on this record because it's not being litigated here. Okay. Well, it is being litigated here. Not actual sanctions, but it's being litigated here right now because we're trying to figure out if shall not operate the STAA has any meaning. So it's very much being litigated right now. Do you have anything? Okay. Thanks very much, Mr. Palmer. We'll hear Mr. Hemmings on rebuttal. Thank you, Your Honor. To that question Your Honor had posed to me before my colleague went, SOX at B2, an action under paragraph 1A, which this is, shall be governed under the rules and procedures set forth in section 2121B, air 21. The rules and procedures. Similar under SOX. It has its own remedies provisions, but similar. Rules and provisions we submit get to paragraph 3B3 of air 21 and those various remedies that are referenced air 21 paragraph 2 that we're seeking to hear. Just to try to put a point on it. Are you agreeing or disagreeing with Mr. Sino? Mr. Sino's assertion, argument is it talks about procedures. Fine. Procedures and remedies are different. I'm not saying it as well as he did, but I understood him to be saying thus. Procedures and remedies are different. SOX pulls in the procedures, doesn't pull in the remedies. That's step one. Do you agree or disagree with that? SOX pulls in the remedies as rules and procedures for use from air 21. So you're saying it does pull in the remedies. It pulls the remedies in under the rubric of procedures. Correct. Okay. Now, to Judge Phipps' question earlier to Mr. Palmer. Is it or is it not the case that the secretary, whether the courts have the power or not, the secretary certainly is operating under procedures which include remedies as laid out in 3B. Correct. Okay. And just to finish the thought, under 3B1, when it says to take affirmative action to abate the violation, do you believe that the secretary of labor has the ability to issue sanctions or other corrective measures for a failure to, when an entity doesn't reinstate pursuant to a preliminary order? Well, I think the secretary through the ARB and Windhauser is, in my understanding, is saying no. As an advocate for the appellants, I would say, I would hope the secretary could do that, but I think the, and I may leave it to the Department of Labor's attorney to give further elucidation of that, but that that's an issue that's unsettled, and I would think, as again. What's up when you say it's unsettled? Sure. Does Windhauser say, no, we don't have authority? Yes. Okay. Yes. And that's an agency interpretation of a statute. We get that de novo. If we were to read the statute that says, thank you, secretary of labor, thank you for your opinion in Windhauser, we disagree, we think that take affirmative action to abate the violation, we have to give that some meaning? We can't read that out of the statute, and the two forms of relief, compensatory damages and reinstate the complainant, seem to cover most of the field except for sanctions. And so what else are we supposed to read that as? I mean, you know, it's a take your pick. Read this one out or read the other one out. Right. So I understand, Your Honor, but to slightly pivot off that, because I kind of want to go before the, you kind of want to go in the final hearing and say they didn't follow your order, we'd like attorney's fees, we'd like some other sanction, we'd like all of that stuff because they granted themselves a stay. You'd love to do that. I would. And to pivot on actually to Judge Jordan's overarching question to all the counsel, except for the chambers about the differing courts, the light bulbs kind of went off, and it fits in with this, if I may. The weeding out of enforcement and this whole notion of, well, you're going to have the Fifth Circuit and the Third Circuit dealing with similar, the same case. I just want to be clear. The AR-21, subparagraph B-4, gives any person only the right to go where the violation occurred. B-5, the secretary can only go where the violation occurred. Okay? So Fifth Circuit for an appeal of a final order from the ALJ, ARB, to the Fifth Circuit. No one can go here with that final order. And I think that's important because your honor was. Yeah, nobody could go there for the final order. It sounds like what you're saying is it would be moot once there's a final order. But you guys have argued pretty vociferously, I thought, this is capable of repetition, not evading review, and therefore it's not moot. So I don't see how you can have it both ways, Mr. Hendrickson. Either it's going to be mooted by final order or it's not. Because if it's not, you could be here and you could be in New Orleans. But for different things. And that's the key. On the same case. But different aspects that Congress found critical. I got you. Because of the preliminary reinstatement importance that SOX found. I understand. Thank you, your honor. Thank you very much. And you know what? It's a long argument, but you are correct, Mr. Hendrickson. We have the advantage of the Secretary's representative here today, Mr. Daley. Do you mind just rising for a second and helping us answer this question about whether the Secretary's got a position, whether the Department has a position on whether B-1 gives authority for the leveling of sanctions? And if you can't answer it other than to the point at the case, the Windhauser case, we understand. I just want to give you a shot at it. Well, let me just read from the Windhauser case right here. Which says, we conclude that the Secretary, and thus the ALJ, did not have the authority to impose monetary sanctions, and that any enforcement actions for failure to reinstate are by statute in the jurisdiction of the federal district courts. Do you have a position with respect to whether the remedies section of Air 21 is in the mix when it comes to a SOX violation, or whether, as Mr. Sino has asserted, it is not? Because it's not procedure, it's remedy. Well, you know, that argument I don't believe Mr. Sino made below to the district court, and so it hasn't been as fleshed out, perhaps, but I can comment on it. Yeah, we're good for your comment. Okay, so in SOX section B2, where that cross-reference is, it says, under the rules and procedures set forth in section 42121B. And, you know, obviously there's some ambiguity there, but to me, I read rules and procedures in context of set forth in section B, and to assume that they're talking about everything in section B. Including remedies. Including remedies. And I think that that is, I mean, I think the part of why that hasn't come up earlier is because I don't think anyone's ever made that argument before. But, so that, I think, is how we interpret that. You know, in terms of. . . You're not aware of any case law making that distinction. I'm certainly not aware of any case law making that distinction. Can I just ask you a question about B1, when it says take affirmative action to abate the violation? But let's, you know, let's not come here and read that out of the statute. Let's not leave here reading that out of the statute. If B2 says reinstate, and B3 says provide compensatory damages, what work does B1 do? We can't read it out. We have to give it some meaning, right? That's the can against superfluity. You come here telling us the can against superfluity. We can't read it out. And so my question is, you know the question. I mean, I assume that Congress was intending to kind of leave it open to, you know, do what is necessary to make sure justice is done with language. Abate the violation. It seems, you know, like it's given a decent amount of authority to the Secretary. I guess the question is what is, you know, abating the violation. It seems that if someone doesn't follow an order, it seems if someone doesn't follow an order, that violation got bigger and it needs to be, an action needs to be taken to abate it. But the sanctions against the defendant abate the violation in the sense that the, you know. Well, so then it has no meaning. If the only thing that has meaning is reinstatement and compensatory damages, then I guess we read B1 out. Someone's ox gets bored. It needs to be one or the other one. You're in the unusual position of having to say the Secretary doesn't have power. You're actually in the unusual position of saying that behavior which you might even view as That's just an odd thing, I think, for the Department to be in an unusual position. It is an unusual position, and I think that if, you know, if the Secretary and the Department hadn't taken its position in Windhauser, you know. But doesn't that position mean that there's no meaning to B1? You've given me no meaning for B1. Well, I think B1. B1 isn't just talking about preliminary. No, I know. But just what meaning does it have? The meaning could have to do with things other than enforcing preliminary orders. Give me some examples. So B says, if the Secretary determines a violation has occurred, the Secretary shall order the person who committed such violations to take affirmative action to abate the violation. So we're talking about Exxon, ExxonMobil is, you know, the Secretary shall order ExxonMobil to do something. And what might that be? We know that other options under Romanet 2 and 3 are reinstatement and compensatory damages. What other things might the Secretary want ExxonMobil to do once it determines that it wrongfully dismissed individuals? I mean, reinstatement and compensatory damages are the default. What has that meaning? You've hit a superfluity problem of your own. I mean, you've caught me with a question that nobody breathed in there. So I wouldn't say that it necessarily has a meaning. I mean, the answer could be sanctions, right? The dangling answer is sanctions. The answer could be sanctions, but the Secretary has said no. It seems that the answer could be something internal to make some changes internally within Exxon that are not specifically about these particular plaintiffs. Perhaps policy changes or, you know, education. I mean, there could be some variety of things that the Secretary could order Exxon to do. Enhanced settlement agreements is what we call them. It sounds like sanctions, actually, but maybe you could call it something else. I'm going to make you do something else because you didn't obey me. Okay. Thank you very much, all counsel. Listen, we'll ask you to prepare, get a transcript prepared of this. Confer with each other on the division of costs and get a transcript of the argument. We appreciate all counsel. We appreciate you being here as well.